JS - 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-08950 MMM (PLAx) | Date | April 12, 2010 |

| | |
|---|---|
| Title | *Karen Logan v. U.S. Bank National Association, et al.* |

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**   **Order Dismissing Action for Lack of Subject Matter Jurisdiction**

On March 22, 2010, the court issued an order directing plaintiff to show cause why this case should not be dismissed for lack of subject matter jurisdiction ("March 22 order").[1] The court noted that it would be required under *Younger v. Harris*, 401 U.S. 37, 40–41 (1971), to abstain from hearing plaintiff's prayer for an order enjoining a pending state unlawful detainer action in which defendant sought to have plaintiff evicted.[2] Further, the court noted that it did not appear that it had subject matter jurisdiction to hear plaintiff's claims because the federal statute on which plaintiff relies does not create a private right of action.[3]

---

[1] Order to Show Cause, Docket No. 11 (March 22, 2010).

[2] *Id.* at 2–6.

[3] *Id.* at 6–13.

On March 29, 2010, plaintiff filed a response to the court's order;[4] defendant filed a reply on April 2, 2010.[5] For the following reasons, the court dismisses plaintiff's complaint for lack of subject matter jurisdiction.

## I.  FACTUAL BACKGROUND

On December 9, 2007, *pro se* plaintiff Karen Logan filed this action against defendant U.S. Bank National Association ("US Bank"), alleging that defendant had violated federal law in filing an unlawful detainer action against her in Los Angeles Superior Court.[6] Logan alleges that she is a tenant of the former owner of property located in Westlake Village, California.[7] She asserts that US Bank acquired the property through a foreclosure sale, and subsequently served her with a three-day notice to quit.[8] Disputing the legitimacy of the three-day notice, Logan asserts that US Bank improperly initiated the unlawful detainer action against her and other residents at the property.[9]

Logan contends that US Bank was required to give her a ninety-day notice of termination under the "Effect of Foreclosure on Preexisting Tenancy" section of the Helping

---

[4]Response to OSC Re: Dismissal for Lack of Jurisdiction ("Pl. Response"), Docket No. 15 (March 29, 2010).

[5]Brief in Response to Order to Show Cause, Docket No. 16 (April 2, 2010).

[6]Complaint, Docket No. 1 (Dec. 7, 2009). Logan attempted to remove the state court unlawful detainer action to federal court twice. In response to her first removal, Judge Howard Matz issued an order to show cause why the matter should not be remanded based on untimely removal. (Order to Show Cause, Case No. 09-08956, Docket No. 5 (Dec. 15, 2009).) Logan failed to respond to Judge Matz's order and the action was remanded. (Order to Remand, Case No. 09-08956, Docket No. 6 (Jan. 5, 2010).) Logan's second notice of removal was transferred to this court as related to the present action. On February 23, 2010, the court ordered the case remanded to the Los Angeles Superior Court for lack of subject matter jurisdiction. (Order to Remand, Case No. 10-00235, Docket No. 10 (Feb. 23, 2010).) The complaint names US Bank in its capacity as "trustee," but does not identify for whom the bank was acting as trustee. It also alleges that US Bank was both the lender for and purchaser of the property. (*Id.*, ¶ 3.) Defendant has filed a motion to dismiss, asserting that it was acting as trustee for WAMU Mortgage. (Motion to Dismiss, Docket No. 5 (Jan. 25, 2010)).

[7]Complaint, ¶ 4.

[8]*Id.*, ¶ 5.

[9]*Id.*, ¶¶ 4–5.

2

Families Save their Homes Act of 2009, Pub. L. No. 111-22, 123 Stat. 1632 (2009) ("Section 702").[10] Citing Section 702, Logan's complaint seeks injunctive relief to stop the unlawful detainer action, as well as damages against US Bank in the amount of $20,000.[11] The complaint asserts that "injunctive relief is proper because the State Court refused to enforce the Federal Law when brought to its attention in a demurrer, and is now threatening to proceed with trial to evict Plaintiff from the premises in defiance of the federal law."[12] Logan contends that she "is suffering and will suffer further damages from Defendant's violation of Federal Law in the amount of $20,000, plus daily damages and further damages as the impact of the eviction on Plaintiff's future tenancies is revealed."[13]

In response to the court's March 22 order, Logan reported that the state court action had been dismissed after it was remanded.[14] US Bank did not dispute this assertion in its reply, and its attorney advised the court clerk that the state court action was dismissed without prejudice on February 25, 2010.

## II. DISCUSSION

### A.   The Court Must Abstain from Exercising Jurisdiction over this Action under *Younger v. Harris*

Because Logan's complaint seeks to enjoin an unlawful detainer action that was pending in state court at the time this action was filed, the court must abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37, 40–41 (1971).[15] *Younger* directs that federal courts abstain from granting injunctive or declaratory relief that would interfere with state judicial proceedings. See *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose* ("*Chamber of Commerce*"), 546 F.3d 1087, 1091-92 (9th Cir. 2008) ("*Younger* abstention is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism," citing *Steffel v. Thompson*, 415 U.S. 452, 460-73, (1974) (explaining the history and purposes of the doctrine), *Younger*, 401 U.S. at 43-49 (discussing

---

[10] *Id.*, ¶¶ 1, 4–6.

[11] *Id.*, ¶¶ 7–8.

[12] *Id.*, ¶ 7.

[13] *Id.*, ¶ 8.

[14] Pl.'s Response at 2.

[15] Although not addressed by the parties, Logan's claims now appear to be moot because the harm she alleges flowed from eviction proceedings that have now been dismissed.

the jurisprudential background of abstention), and *Gilbertson v. Albright*, 381 F.3d 965, 970-75 (9th Cir. 2004) (en banc) (tracing the Supreme Court's application of the doctrine)).

Although *Younger* itself involved potential interference with a state criminal case, the Supreme Court has extended the doctrine to federal cases that would interfere with state civil and administrative proceedings. *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986). Abstention in civil proceedings is justified by the vital consideration of comity, i.e., "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 10.

As detailed by the Ninth Circuit, federal courts "must abstain under *Younger* if four requirements are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves." *Chamber of Commerce*, 546 F.3d at 1092 (citing *Gilbertson*, 381 F.3d at 978 and *AmerisourceBergen Corp. v. Roden* ("*ABC*"), 495 F.3d 1143, 1149 (9th Cir. 2007) (noting that a federal court should "abstain[] only if there is a *Younger*-based reason to abstain – i.e., if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings").

As respects the first *Younger* requirement, Logan clearly states that she seeks to enjoin the state court from "proceed[ing] with trial to evict Plaintiff."[16] Although the state court case was apparently dismissed on February 25, 2010, "*Younger* abstention requires that the federal courts abstain when state court proceedings were ongoing at the time the federal action was filed." *Beltran v. California*, 871 F.2d 777, 782 (9th Cir. 1988) (holding that dismissal was required under *Younger* because state court proceedings were ongoing at the time the federal action was filed, and stating that "[a]lthough the state court proceedings were completed by the time the district court granted summary judgment, and an abstention order in this case may result simply in the appellees refiling their federal complaint, this outcome is required by *Younger*").

While Logan contends that *Younger* does not apply because the state court action is no longer pending, there is no dispute that the unlawful detainer action was ongoing at the time this case was filed. Accordingly, the court must dismiss the federal action, even though the state court case has now concluded. See *id*. ("Where *Younger* abstention is appropriate, a district court cannot refuse to abstain, retain jurisdiction over the action, and render a decision

---

[16]Complaint, ¶ 7.

on the merits after the state proceedings have ended. To the contrary, *Younger* abstention requires dismissal of the federal action," citing *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973).

As respects the second requirement, district courts have routinely found that unlawful detainer actions represent a sufficient state interest to warrant *Younger* abstention. See, e.g. *McGlothin v. Santos*, No. L 5135996, 2008 WL 5135996, *5–6 (E.D. Cal. Dec. 8, 2008) (stating that "[t]he state has an important and substantial interest in overseeing, managing and adjudicating housing related issues," citing *Younger*, and abstaining in a case that would interfere with a state court unlawful detainer action); *Hicks v. Superior Court of California, County of Kern*, No. 08-CV-0207 OWW TAG, 2008 WL 638544, *5 (E.D. Cal. March 5, 2008) (same); *Daniels v. Superior Court of California, County of Kern* , No. 08-CV-0208 LJO TAG, 2008 WL 638509, *6 (E.D. Cal. Mar. 5, 2008) (same). While Logan disputes that the state has an interest in the eviction of tenants, property rights have historically been considered an area of state concern. See *Wong v. Astrue*, C 08-02432 SBA, 2008 WL 2051044, *3 (N.D. Cal. 2008) ("Here California has an important interest in protecting real property transfers and leasehold estates, which have historically and traditionally been the domain of the states, and not the federal government. Thus, the state interests here support the Court abstaining under *Younger*").

The third requirement for *Younger* abstention is that plaintiff have an adequate opportunity to litigate her federal claims in the state court proceeding. Logan alleges that she is "effectively barred from litigating the federal question in state court as the overruling of her demurrer in State court upon that basis proved."[17] That Logan had an opportunity to raise Section 702 as a defense in the unlawful detainer action is consistent with the general principle that tenants generally may assert legal or equitable defenses that "directly relate to the issue of possession and which, if established would result in the tenant's retention of the premises." *Green v. Superior Court of San Francisco*, 10 Cal.3d 616, 633 (1974). Among such defenses are violations of federal law, which is the basis of Logan's present complaint. See, e.g., *Colony Cove Associates v. Brown*, 220 Cal.App.3d 195, 269 Cal.Rptr. 234 (1990) (adjudicating a defense asserting violation of the Fair Housing Act in an unlawful detainer action).

"Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'" *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (quoting *Moore v. Sims*, 442 U.S. 415, 426 (1979)); see also *Moore*, 442 U.S. at 425 ("The pertinent issue is whether appellees' [ ] claims could have been raised in the pending state proceedings"). Although the state court overruled her demurrer, the third *Younger* requirement is satisfied here since Logan

---

[17]Pl.'s Response at 2.

was able to assert her Section 702 defense in the unlawful detainer action.[18]

The fourth requirement for *Younger* abstention is that the federal court action would enjoin a state court proceeding, or have the practical effect of doing so. The primary relief Logan seeks is to have this court enjoin the state court proceeding.[19] This type of interference has been described by an en banc panel of the Ninth Circuit as "the most offensive and intrusive action that a federal court can take with respect to a state court proceeding." *Gilbertson*, 381 F.3d at 977. The relief Logan seeks thus falls squarely within the type of federal action *Younger* was intended to prevent. See *McGlothin*, 2008 WL 5135996 at *5–6 ("Similarly, if the unlawful detainer case is still pending in the state court, this court should not interfere with those proceedings. *Younger* abstention is a common law equitable doctrine

---

[18]Because the state court action has been dismissed without prejudice, Logan's claim that she was barred from effectively raising Section 702 as a defense also appears to be moot. Moreover, to the extent plaintiff asserts that the unlawful detainer court reached the wrong result, and seeks relief from that ruling, her claim is barred by the *Rooker-Feldman* doctrine. See generally *Wolfe v. Strankman*, 392 F.3d 358, 363 (9th Cir. 2004) (stating that the *Rooker-Feldman* doctrine bars a federal district court "from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment," citing *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004)); *Noel v. Hall*, 341 F.3d 1148,1164 (9th Cir. 2003) ("If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court"); see also *Bridgewater v. Hayes Valley Ltd. Partnership*, No. C 09-3551 PJH, 2009 WL 4050894, *4 (N.D. Cal. Nov. 20, 2009) (dismissing for lack of federal subject matter jurisdiction claims that disputed a state court's entry of judgment in an unlawful detainer action under the *Rooker Feldman* doctrine).

[19]In her response, Logan contends that the injunction is "directed to the Defendant, not the State court." (Pl.'s Response at 2.) Construing the complaint in this manner, the requested injunction would still have the "practical effect" of interfering with the state court's ability to address defendant's claim. See *Chamber of Commerce*, 546 F.3d at 1095–96 ("Plaintiffs sought, and the district court granted, a permanent injunction against Defendants to preclude them from enforcing the statute. That injunction consequently prohibits the Elections Commission from imposing the fine against Plaintiffs. The relief sought therefore would 'interfere' with the Elections Commission's proceeding, because it would 'enjoin . . . or otherwise involve the federal courts in terminating or truncating' the Elections Commission's proceeding," quoting *Green v. City of Tucson*, 255 F.3d 1086, 1098 (9th Cir. 2001) (en banc)). Logan concedes as much, noting that "[t]he Federal action does seek to have the effect of enjoining the State proceeding, because the very purpose of the Federal law is to impose new criteria to the eviction formula which the State court would not do." (Pl.'s Response at 2.)

holding that a federal court generally should refrain from interfering with a *pending* state court proceeding" (internal citation omitted)); *Hicks*, 2008 WL 638544 at *5 ("[Plaintiff alleges that the] unlawful detainer proceedings were unlawful because Defendants U.S. Bank and Ocwen did not hold the mortgage on her property. In accordance with the abstention doctrine under *Younger,* this Court should abstain from intervening in or circumventing the on-going Superior Court proceedings"); *Daniels*, 2008 WL 638509 at *6 ("[Plaintiff] alleges that the foreclosure and unlawful detainer proceedings were unlawful because Defendants did not hold the mortgage on her property. In accordance with the abstention doctrine under *Younger,* this Court should abstain from intervening in or circumventing the on-going Superior Court proceedings").

Because each of the four *Younger* requirements is satisfied, the court must dismiss Logan's claim for injunctive relief. See *Gilbertson*, 381 F.3d at 981 ("When an injunction is sought and *Younger* applies, it makes sense to abstain, that is, to refrain from exercising jurisdiction, permanently by dismissing the federal action because the federal court is only being asked to stop the state proceeding. Once it is determined that an injunction is not warranted on *Younger* grounds, there is nothing more for the federal court to do. Hence, dismissal (and only dismissal) is appropriate"); see also *Green*, 255 F.3d at 1093 ("[I]n addressing *Younger* abstention issues, district courts must exercise jurisdiction except when specific legal standards are met, and may not exercise jurisdiction when those standards are met; there is no discretion vested in the district courts to do otherwise," overruled on other grounds by *Gilbertson*, 381 F.3d 965). Since Logan has identified no exception to *Younger* abstention that applies,[20] her claim for injunctive relief restraining the state court action must be dismissed.

### B. The Court Does Not Have Subject Matter Jurisdiction Over Logan's Claim for Damages Under Section 702

Even if Logan were to drop her prayer for injunctive relief and seek only damages for US Bank's alleged violation of Section 702, the court lacks subject matter jurisdiction to hear that claim.[21] Federal courts have a duty to examine their subject matter jurisdiction whether

---

[20]For instance, abstention is inappropriate if the state proceedings are instituted in bad faith or if harassment is evident. See *World Famous Drinking Emporium, Ind.*, 820 F.2d 1079, 1082 (9th Cir.1987); *Roberts v. Carrothers*, 812 F.2d 1173, 1177 (9th Cir.1987).

[21]If the court were to find that *Younger* applied but that it had jurisdiction to hear Logan's damages claim, it would normally be required to stay the action until the state court proceeding was complete. As the state court proceeding has been dismissed, the court would, in this case, adjudicate Logan's damages claim. As stated by the Ninth Circuit, "when damages are sought and *Younger* principles apply, it makes sense for the federal court to refrain from exercising jurisdiction temporarily by staying its hand until such time as the state

or not the parties raise the issue.  See *United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 966 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments," citing *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)); see also *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 594–95 (9th Cir. 1996) (holding that lack of subject matter jurisdiction can be raised at any time by either party or by the court *sua sponte*); *Sarei v. Rio Tinto PLC*, 221 F.Supp.2d 1116, 1162, n.190 (C.D. Cal. 2002) ("Because subject matter jurisdiction is a threshold issue that must be examined *sua sponte* . . . the court considers whether it has jurisdiction to hear these claims").

Indeed, "[i]t is . . . presumed that a cause lies outside th[e] limited jurisdiction [of the federal courts], and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) (citations omitted); see also *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) ("The party asserting federal jurisdiction has the burden of establishing it").  Whenever it appears that the court lacks jurisdiction over the subject matter of an action, the court must dismiss the case.  See *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) ("Federal Rule of Civil Procedure 12(h)(3) provides that a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action. . ."); *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1342 (9th Cir. 1981) **(**"A judge, however, may dismiss an action *sua sponte* for lack of jurisdiction").

Citing Section 702, Logan contends that her claims present a federal question supporting federal subject matter jurisdiction.[22]  Federal courts have federal question jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A case arises under federal law where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)).

---

proceeding is no longer pending." *Gilbertson*, 381 F.3d at 981; see also *id*. at 984 ("[W]hen damages are at issue rather than discretionary relief, deference – rather than dismissal – is the proper restraint.  To stay instead of to dismiss the federal action preserves the state's interests in its own procedures, the federal plaintiff's opportunity to seek compensation in the forum of his choice, and an appropriate balance of federal-state jurisdiction").  Even were the court to proceed, however, it is not clear how Logan could recover damages related to her eviction, as the unlawful detainer action was dismissed, and Logan is apparently still in possession of the property.

[22]*Id.*, ¶ 6.

In order to assert that the court may exercise federal question jurisdiction over an action, the plaintiff's "statement of his own cause of action [must] show[ ] that it is based upon federal law." *Vaden v. Discover Bank*, __ U.S. __,129 S.Ct. 1262, 1272 (2009) (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (internal quotation marks omitted)). General federal question jurisdiction under 28 U.S.C. §1331 exists only "when the plaintiff sues under a federal statute that creates a right of action in federal court." *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1022 (9th Cir. 2007); see also *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 817(1986) ("[A] complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States,'" quoting 28 U.S.C. § 1331); *Diaz v. Davis (In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1229–30 (9th Cir. 2008) ("'[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.' Instead, the statute must either explicitly create a right of action or implicitly contain one," quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). Thus, Section 702 cannot support federal question jurisdiction in this matter unless it creates a private right of action for plaintiffs to seek damages based a defendant's violation of the statute. Whether this is so appears to be an issue of first impression.[23]

### 1. Legal Standards Regarding the Creation of Private Rights of Action by Statute

A statute explicitly creates a private right of action when the statute contains language that defines a cause of action. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d at 1230 (9th Cir. 2008). Statutes that expressly provide for a private right of action identify the person(s) able to bring suit, those that are potentially liable, the forum for suit, and the potential remedy available. See *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 166 (2008) (holding that 15 U.S.C. § 77k provides an express private right of action because it says that "any person acquiring such security . . . may, either at law or in equity, in any court of competent jurisdiction, sue . . . every person who signed the registration statement. . ."); *Murphey v. Lanier*, 204 F.3d 911, 912 (9th Cir. 2000) ("The statute provides for an explicit private right of action for an injunction or damages: A person or entity may . . . bring in an appropriate court of that State (A) an action based on a violation of this subsection or the

---

[23]In the context of denying a motion for temporary restraining order, the court in *Cook v. One W. Bank FSC*, No. CIV. S-09-3581 MCE EFB PS, 2009 WL 5218054, *2 (E.D. Cal. Dec. 29, 2009), noted, without analysis, that "plaintiffs ha[d] failed to show that the Helping Families Save their Homes Act of 2009 gives rise to a private right of action." The court has found no decision in which a court has held that the statute does give rise to a private right of action.

9

regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater, or (C) both such actions"). When a statute "does not mention the availability of any action to enforce its mandates, nor [does it]. . . explicitly describe a forum in which suit may be brought or a plaintiff for whom such a forum is available," the statute does not contain an express private right of action. *Diaz*, 549 F.3d at 1230.

If a statute does not create an express private right of action, a court will examine whether the statute implies such a right. See *Cort v. Ash*, 422 U.S. 66, 78 (1975), overruled in part by *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979). In *Cort*, the Supreme Court set forth four factors that are relevant when determining whether a statute provides an implied right of action: (1) whether the plaintiff is a member of a class for whose benefit that statute was enacted; (2) whether there is an indication of Congress's intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the statute's underlying purposes; and (4) whether the cause of action traditionally is relegated to state law. 422 U.S. at 78. The Supreme Court subsequently made clear, however, that the second factor carries more weight than the others because "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche*, 442 U.S. at 575. See also *Thompson v. Thompson*, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) ("[W]e effectively overruled the *Cort v. Ash* analysis in [*Touche Ross*], . . . converting one of its four factors (congressional intent) into *the determinative factor*").

To determine whether a private right of action was intended under a given statute, courts employ the analysis set forth by the Supreme Court in *Alexander v. Sandoval*, 532 U.S. 275 (2001). In *Sandoval*, which involved the interpretation of Title VI of the Civil Rights Act of 1964, the Court observed that "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." 532 U.S. at 286. Unless the statute in question evinces an intent to create a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 287. Thus, statutory intent is determinative. *Id.* at 286. The Ninth Circuit has held, in fact, that courts need not evaluate the remaining *Cort* factors if they conclude that Congress did not intend to create a private right of action. *Stupy v. United States Postal Service*, 951 F.2d 1079, 1081 (9th Cir. 1991).

### 2. Whether Section 702 Expressly Provides for a Private Right of Action

Section 702 of the Helping Families Save the Home Act of 2009 was enacted on May 20, 2009 and provides:
"(a) In general. – In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title [May 20, 2009], any immediate successor in interest in such

10

>property pursuant to the foreclosure shall assume such interest subject to –
>
>(1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and
>
>(2) the rights of any bona fide tenant, as of the date of such notice of foreclosure –
>
>>(A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or
>>
>>(B) without a lease or with a lease terminable at will under state law, subject to the receipt by the tenant of the 90 day notice under subsection (1),
>
>except that nothing under this section shall affect the requirements for termination of any Federal- or State-subsidized tenancy or of any State or local law that provides longer time periods or other additional protections for tenants." Pub. L. No. 111-22, § 702.

Section 702 does not contain explicit language creating a right to sue or a right to a remedy for a violation of its terms. Section 702 also does not identify a potential plaintiff class, persons or entities that would be liable for any resulting harm, or the remedies available if the statute is violated. Compare 47 U.S.C. § 227(b)(3) ("A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State – (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater, or (C) both such actions"). Because Section 702 contains no language expressly creating a right to sue in order to enforce its provisions, it does not create an express right of action. Cf. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d at 1230 (concluding that section 304 of the Sarbanes-Oxley Act "does not explicitly create a private right of action because nothing in the text of the section makes any mention of a cause of action").

### 3. Whether Section 702 Implies a Private Right of Action

As Section 702 does not explicitly provide for a private right of action, it is necessary

11

to determine if an implied private right of action exists by examining Congress's intent in enacting the statute. See *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 836 (9th Cir. 2004). When analyzing Congressional intent to create a private right of action, courts limit their inquiry to three relevant sources: (1) "rights-creating" language in the statutory text; (2) the statutory structure within which the provision in question is embedded; and, only if the statutory text and structure yield no conclusive answer, (3) the legislative history. See *Diaz*, 549 F.3d at 1230–34 (citing *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text. . ."), and *Opera Plaza*, 376 F.3d at 836 (noting that courts must examine "the entire statutory scheme provided by Congress in determining if a private cause of action exists, [and] noting that analogous provisions expressly providing for private causes of action can imply congressional intent not to create an implied cause of action")).

Rights creating language exists where the statute's language focuses on the individuals protected and provides a right and remedy for those individuals. See *Sandoval*, 532 U.S. at 289 ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons,'" quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981). Section 702 does not focus on the individuals protected by the statute; instead, it focuses on the parties regulated by the statute, the "immediate successors in interest" of federally related mortgages that are foreclosed. Section 702 regulates how much notice the immediate successors in interest must give tenants of the property in the event of termination; it specifies that successors in interest must give bona fide tenants a ninety-day notice to vacate. It also affirms that successors in interest acquire the property subject to the rights of tenants under an existing lease. Section 702 does not grant new rights or provide new remedies for the tenants in the event the successor in interest violates these provisions. Without clearer language, the court cannot find that Section 702 gives rise to an implied private right of action. Cf. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d at 1232 (holding that section 304 of the Sarbanes-Oxley Act "focuses on 'the person regulated' rather than the 'individual[ ] who will ultimately benefit from [the statute's] protection,' and thus does not provide a private right of action," quoting *Alexander*, 532 U.S. at 289); see also *Gonzaga University v. Doe*, 536 U.S. 273, 290 (2002) ("[I]f Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms – no less and no more than what is required for Congress to create new rights enforceable under an implied private right of action").

Although the language of Section 702 does not suggest a congressional intent to create a private right of action, courts must also "examine the entire statutory scheme provided by Congress" to determine legislative intent. *Opera Plaza*, 376 F.3d at 836. Where "analogous provisions" expressly provide for a private right of action, courts must infer that Congress did not intend to create a private right of action in the statute at issue, because "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross*, 442 U.S. at 572; see also *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,

444 U.S. 11, 19 (1979) ("[where a] statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"). The context of the statute guides the court because where a "statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Id.* (quoting *Botany Worstead Mills v. U.S.*, 278 U.S. 282, 289 (1929)).

Section 702 is part of the Emergency Economic Stabilization Act ("ESSA'), 12 U.S.C. §§ 5201 *et. seq.* (2009). ESSA's purposes are:

> (1) to immediately provide authority and facilities that the Secretary of the Treasury can use to restore liquidity and stability to the financial system of the United States; and
>
> (2) to ensure that such authority and such facilities are used in a manner that--
>
>> (A) protects home values, college funds, retirement accounts, and life savings;
>>
>> (B) preserves homeownership and promotes jobs and economic growth;
>>
>> (C) maximizes overall returns to the taxpayers of the United States; and
>>
>> (D) provides public accountability for the exercise of such authority." 12 U.S.C. § 5201 .

Specifically, Section 702 is part of the Troubled Assets Relief Program ("TARP"), which was enacted as a subchapter of EESA. See 12 U.S.C. §§ 5211–5241. TARP authorized the Department of the Treasury to purchase or insure up to $700 billion of troubled assets.[24]

---

[24]Troubled assets are defined as:

> (A) residential or commercial mortgages and any securities, obligations, or other instruments that are based on or related to such mortgages, that in each case was originated or issued on or before March 14, 2008, the purchase of which the Secretary determines promotes financial market stability; and
>
> (B) any other financial instrument that the Secretary, after consultation with the Chairman of the Board of Governors of the Federal Reserve System, determines the purchase of which is necessary to promote financial market stability, but only upon transmittal of such determination, in writing, to the appropriate

TARP directs the Department of Treasury and other federal agencies to modify loans that they own or control and expands the "HOPE for Homeowners" program by altering eligibility and increasing the ability of the Department of Housing and Urban Development (HUD) to help more families keep their homes. 12 U.S.C. §§ 5211–12, 5219–20.

Section 702 does not include a specific statement of purpose indicating that it is designed to accomplish something different than the general statutory purposes of EESA and TARP. EESA and TARP contain many guidelines for action by the Secretary of Treasury and other regulatory and enforcement agencies. See, e.g., 12 U.S.C. § 5216 (granting the Secretary of the Treasury the right to manage, sell, and transfer troubled assets acquired through EESA); 12 U.S.C. § 5226 (providing the Comptroller General of the United States the authority to review and oversee the activities and performance of the Troubled Assets Relief Program (TARP)); 12 U.S.C. § 5219 (directing the Secretary of the Treasury to "maximize assistance for homeowners" by encouraging loan servicers to participate in the HOPE for Homeowners Program and coordinate the efforts of various federal agencies).

In creating TARP, Congress provided a private right of action for those directly harmed by the Secretary's actions. See 12 U.S.C. § 5229(a) (allowing courts to set aside actions by the Secretary "if found to be arbitrary, capricious, an abuse of discretion, or not in accordance with law"). This right of action is limited to individuals directly affected by the Secretary's action, however, and permits the filing of an action against the Secretary, not against TARP fund recipients or private lenders. *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1185 (N.D. Cal. 2009). Because Congress included express provisions providing for the enforcement of TARP, it is "highly improbable that 'Congress absent mindedly forgot to mention an intended private action'" for other sections of the statute. *Transamerica*, 444 U.S. at 20 (quoting *Cannon*, 441 U.S. at 742 (Powell, J., dissenting) (internal quotations omitted)); see also *Sandoval*, 532 U.S. at 290 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others"). Logan's argument that the provision of a remedy for those harmed by the Secretary's actions should be construed to permit actions against private parties, therefore, is unavailing.[25] By providing a cause of action against the Secretary of the Treasury, but omitting reference to other causes of action, it appears that Congress did not intend to create a private right of action for violation of Section 702's ninety-day notice requirement.

Because the statutory language and structure indicate that Congress did not intend to create a private right of action, it is unnecessary to evaluate the legislative history.[26]

---

committees of Congress. 12 U.S.C. § 5202.

[25] Pl. Response at 3.

[26] Logan contends that a finding that there is no judicial remedy for violation of the statute denies tenants rights that Congress intended them to have. (*Id.*) As detailed by the

*Sandoval*, 532 at 286 ("Statutory intent . . . is determinative"); *Lonberg v. City of Riverside*, 571 F.3d 846, 850 (9th Cir. 2009) ("Thus, *Sandoval* instructs that because only Congress can create a private right of action through statute, we must examine a challenged regulation in the context of the statute it is meant to implement"); *Love v. Delta Air Lines*, 310 F.3d 1347, 1353 (11th Cir. 2002) ("[I]f – and only if – statutory text and structure have not conclusively resolved whether a private right of action should be implied, we turn to the legislative history and context within which a statute was passed").[27]

### 4. Conclusion Regarding Whether There Is A Private Right of Action Under Section 702

For the foregoing reasons, the court finds that Section 702 does not create either an express or implied private right of action for tenants to seek damages against successors in interest to foreclosed property for violating the ninety-day notice requirement. Consequently, the court lacks subject matter jurisdiction to hear Logan's damages claim based on Section 702. See *Williams*, 500 F.3d at 1022 (finding that federal-question jurisdiction pursuant to 28 U.S.C. §1331 is only applicable "when the plaintiff sues under a federal statute that creates a right of action in federal court"); *Merrell Dow Pharms. Inc.*, 478 U.S. at 817 ("[A] complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United

---

Supreme Court, however, creating judicial remedies to give effect to a presumed Congressional purpose is a practice that has long-since been abandoned by the federal courts:
> "Respondents would have us revert in this case to the understanding of private causes of action that held sway 40 years ago when Title VI was enacted. That understanding is captured by the Court's statement in *J. I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964), that 'it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose' expressed by a statute. We abandoned that understanding in *Cort v. Ash*, 422 U.S. 66, 78 (1975) – which itself interpreted a statute enacted under the ancien regime – and have not returned to it since. . . . Having sworn off the habit of venturing beyond Congress's intent, we will not accept respondents' invitation to have one last drink." *Sandoval*, 532 U.S. at 287.

While Logan contends that "Congress assumes common sense from the bench," the court is not at liberty to create remedies not expressly or impliedly created by Congress. This limitation is one of which Congress has long been aware.

[27]The legislative history does not undermine the conclusion that there is no private right of action under Section 702. See H.R. Rep. 111-019, at 4 (2009) (noting that the purpose of a prior bill containing Section 702 was to enable government agencies to take action to stabilize the increasing number of foreclosures); Sen. Rep. 110-154, at 2 (2008) (same).

States,'" quoting 28 U.S.C. § 1331.; *In re Digimarc Corp. Derivative Litig.*), 549 F.3d at 1229–30 ("'[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.' Instead, the statute must either explicitly create a right of action or implicitly contain one," quoting *Touche Ross & Co.*, 442 U.S. at 568).

### III.  CONCLUSION

For the foregoing reasons, the court dismisses plaintiff's claims for lack of subject matter jurisdiction.